IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

ELIAS GONZALES,

      Plaintiff,

v.                                                    No. CIV O3-1150 BB/WDS

THE CITY OF ALBUQUERQUE, ROBIN BURGE,
and KEVIN FULLER, City of Albuquerque Police Officers,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of the following motions: two motions for summary judgment filed by Defendants (Docs. 11, 53); a motion for summary judgment filed by Plaintiff (Doc. 29); Defendants' motion to strike several affidavits filed by Plaintiff (Doc. 32); and a motion to dismiss Plaintiff's municipal-liability claim, filed by Defendants (Doc. 50). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that all of the motions listed will be denied.

**Summary of the Facts:** This case arises out of the seizure of over $4,200 from Plaintiff's person and his home. The seizure was based on a search warrant obtained by Defendant Burge on April 24, 2003. Plaintiff's home was searched on May 2, 2003. No charges were filed against Plaintiff following the search and the seizure of the money. However, Plaintiff's money was not returned to him until after Plaintiff filed this lawsuit. The circumstances surrounding the initial search, the seizure of the money, and the failure to return it are all disputed by the parties.

Plaintiff raises the following claims in this case: (1) a 42 U.S.C. § 1983 claim against Defendants Burge and Fuller, in their individual capacities, for executing the warrant even though

there was no probable cause to issue the warrant and therefore a reasonable police officer could not have believed the warrant was valid; (2) a § 1983 claim against the same Defendants, in their individual capacities, for seizing the money without probable cause to believe the money was connected to any criminal activity; and (3) a due process claim against the City, alleging that Plaintiff was deprived of his money without due process of law, and that the City has a custom and policy of relying on "bad" information provided by confidential informants, as well as a custom and policy of seizing money without probable cause to support such seizure, and refusing to return the money. In response, the individual Defendants have requested qualified immunity and all Defendants have moved, through summary judgment or otherwise, for the dismissal of all claims. Once the issue of qualified immunity was raised, a stay of discovery was entered in this case. Counsel for Plaintiff has since filed three Rule 56(f) affidavits, requesting an opportunity to perform discovery. Rather than addressing each motion filed by the parties separately, the Court will discuss the causes of action raised by Plaintiff and, based on that discussion, will deny all motions filed by the parties.

**Probable Cause for Issuance of Warrant:** Defendant Burge obtained the search warrant for Plaintiff's home[1] by attaching an affidavit containing the following essential statements: (a) that a confidential source had made a controlled buy of crack cocaine from Plaintiff, at a location other than Plaintiff's home; (b) that based on Burge's experience, individuals who sell narcotics keep such narcotics inside their residence; and (c) that the

---

[1]The warrant also covered Plaintiff's vehicle and person. However, the majority of the money was found in Plaintiff's home, and the search of the home is the focus of Plaintiff's Fourth Amendment claim. Therefore, for convenience the Court will refer to the warrant as a warrant to search the home.

confidential source was reliable. Given these limited facts in the affidavit, Plaintiff's first argument is that no reasonable police officer could believe one controlled buy, made at a location other than a home, provides probable cause to search that home. Plaintiff contends there must be more of a connection to the home than the mere fact that the owner or occupant of the home sold contraband at a different location.

The Court notes that the individual Defendants have asserted an entitlement to qualified immunity. In order to overcome this assertion, Plaintiff was required to establish that a constitutional violation occurred, and that the violation of the constitution was apparent under clearly established law. *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1117 (10th Cir. 2004). After reviewing the case law on this point, the Court finds the law was not and is not clearly established, at least in the federal system, as to the crucial point in this case: whether a sale or sales of narcotics, occurring away from the suspect's home, provides probable cause to search the suspect's home.

A number of circuits have held that evidence of drug trafficking "will likely be found where a drug trafficker lives." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (citing cases). In these circuits, this likelihood has been held sufficient to provide probable cause to search a home even where no drug transactions have been observed at the home. *See, e.g., United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). The Tenth Circuit in *Nolan* did not adopt this presumption. However, the *Nolan* panel did apply the good-faith exception to the exclusionary rule, and upheld the search of a residence even though the suspect had been "careful not to sell drugs to anyone from his residence...". 199 F.3d at 1185. The panel relied on the state of the law in other circuits,

as well as the unsettled state of the law in the Tenth Circuit. *Nolan*, therefore, holds in essence that an officer who relies on a warrant to search a home, even where no drug transaction has been observed at the home, acts in good faith. Since *Nolan* appears to be the last word from the Tenth Circuit on this subject, and the law in other circuits appears to support a presumption that a home may be searched if the occupant of the home has been observed selling drugs, the Court cannot find that Defendants Burge and Fuller violated clearly established law by relying on the warrant issued in this case to search Plaintiff's residence, assuming that the facts stated in the affidavit are true.

If there were no factual questions about the alleged controlled buy of crack cocaine from Plaintiff, the above discussion would resolve the warrant issue in favor of Defendants. However, Plaintiff maintains he has raised a factual issue about whether the controlled buy did in fact occur. If no such buy occurred, the basis for accusing Plaintiff of being a drug dealer would dissipate, as would the basis for the search of Plaintiff's home. Plaintiff points to the following evidence in support of his contention that no controlled buy occurred: he denies, under oath, that he ever sold drugs to anyone, and in particular avers he did not sell drugs in April 2003; and he was not charged with any crime as a result of the alleged controlled buy in this case, nor was the alleged buy reported to his probation officer. [Exh. A, Resp. to MSJ][2]

Plaintiff's mere denial that he made a sale of crack cocaine, standing alone, does not affect the probable cause analysis; if the confidential informant told Officer Burge that the informant

---

[2]Plaintiff also presents evidence that he worked long hours at his job in the two-day period during which the controlled buy allegedly occurred. The Court does not rely on this evidence, however, because the affidavit supporting the search warrant did not specify the time of the alleged buy, so it is impossible to compare that time to Plaintiff's work schedule.

purchased drugs from Plaintiff, and Burge believed the informant, that information alone would provide probable cause that the controlled buy did take place despite Plaintiff's later denial. However, the fact that no charges were ever filed against Plaintiff, as well as the fact that Plaintiff's participation in the alleged sale of drugs was not even reported to his probation officer, gives rise to a possible inference that Defendant Burge, who submitted the affidavit for search warrant, was not entirely confident about the veracity of the confidential informant. In other words, if Burge thought the informant was reliable, the informant's testimony alone could have been sufficient to support criminal charges against Plaintiff arising out of the alleged controlled buy.[3] For purposes of summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Combs v. Pricewaterhousecooper LLP*, 382 F.3d 1196, 1199 (10th Cir. 2004). One reasonable inference from the unexplained absence of any charges against Plaintiff, coupled with Plaintiff's flat denial that he was involved in any sale of drugs, is that Defendant Burge harbored doubts about whether the controlled buy did take place, or about whether Plaintiff was the person involved in the alleged controlled buy.[4] There is a factual issue, therefore, as to whether the information included in the search warrant affidavit accurately reflected the facts as known by Burge. Since the occurrence of the controlled buy is the essential basis for the issuance of the search warrant and

---

[3]The Court notes that according to the search warrant affidavit, Defendant Burge did not actually witness the alleged exchange between the confidential informant and Plaintiff. [Exh. B, MSJ]

[4]The Court recognizes there are a number of other possible reasons why no charges were filed against Plaintiff. At this stage of the case, however, the Court must accept the inference most favorable to Plaintiff.

the search of Plaintiff's home, summary judgment cannot be granted to Defendants or to Plaintiff on this claim.[5]

**Probable Cause to Seize Cash:**  In order to seize property pursuant to a search warrant, the officers conducting the search must have probable cause to believe the property is subject to forfeiture or is evidence of a crime.  *See, e.g., Lee v. City of Chicago*, 330 F.3d 456, 464-65 (7th Cir. 2003) (property may be briefly detained upon reasonable suspicion of criminal activity or upon the owner's consent; if either of these preconditions expires, a full-blown seizure must be justified by probable cause); *Altman v. City of High Point*, 330 F.3d 194, 202-03 (4th Cir. 2003) (Fourth Amendment protects property as well as privacy; seizure of property must be supported by warrant issued upon probable cause); *Walden v. Carmack*, 156 F.3d 861, 873 (8th Cir. 1998) ("Law enforcement officials must have probable cause to believe that items seized in connection with a valid search warrant are associated with suspected criminal activity.").  Plaintiff argues there was no probable cause to connect the cash seized from his person and his home with any criminal activity.  He again points to the fact that no charges were ever filed against him, no forfeiture action was ever filed against the seized money, and his alleged misdeeds were not even reported to his probation officer.  He also points to Defendant Burge's affidavit, in which she states that after the search, she told Plaintiff the money would be returned to him unless the DEA

---

[5]The Court notes that the parties have lumped together Defendants Burge and Fuller with respect to this cause of action, as well as the claim based on the seizure of Plaintiff's money.  It is not clear at this point what knowledge or involvement, if any, Fuller had concerning the controlled buy and the failure to bring charges arising out of that buy.  Since Plaintiff has not yet had an opportunity to perform discovery, however, the Court will not dismiss Fuller from the case at this time.

6

"accepted" the case. [Exh. A, MSJ]⁶  Finally, he provides evidence of a legitimate source of the money seized by Defendants--his tax refunds, which added up to a little more than the amount seized.  [Attachments to Exh. A, Resp. to MSJ]

In response to Plaintiff's arguments, Defendants maintain the following evidence provided probable cause to believe the seized money was associated with criminal activity:  (1) the alleged controlled buy of crack cocaine from Plaintiff; (2) pay stubs found during the search appearing to establish that Plaintiff has a small source of legitimate income, yet he drives an expensive Humvee and lives in an expensive house; and (3) a dog sniff of the seized money, during which the dog alerted to the cash.  [Exh. A, MSJ]  For several reasons, however, the Court finds that these facts regarding probable cause are disputed or are entitled to little weight in the probable-cause analysis.

As discussed above, the reliability of the controlled buy is in dispute, due to the lack of information as to why that alleged controlled buy did not result in any sort of criminal action or forfeiture action.  If Defendants did not believe there was probable cause to arrest Plaintiff for a crime, unless the search actually revealed the presence of drugs, there is no reason the probable cause analysis should be any different for the seizure of the money.  In sum, until the reason for the lack of an arrest, criminal charges, or a forfeiture action becomes apparent, the Court must accept the inference most favorable to Plaintiff--that Defendants knew there were problems with the alleged controlled buy and did not believe that buy was sufficient to provide probable cause for arresting Plaintiff or seizing his property.

---

⁶From this statement, Plaintiff would draw the inference that the money was not seized as evidence of any crime, but on behalf of the DEA to allow the DEA to pursue a forfeiture action.

As to the disparity between Plaintiff's lifestyle and his legitimate source of income, such a disparity alone cannot provide probable cause to believe that any cash found in a suspect's house is ill-gotten, and Plaintiff provided a legal explanation for the source of the seized money.[7] Furthermore, the amount of money involved is not large, which is a factor that courts have taken into account in deciding whether probable cause exists to support a forfeiture. *See, e.g., United States v. $5,000*, 40 F.3d 846, 850 (6th Cir. 1994) (agreeing with 9th Circuit's statement that fifteen to twenty thousand dollars is hardly enough cash, standing alone, to provide more than a suspicion of illegal activity); *United States v. $191,910*, 16 F.3d 1051, 1072 (9th Cir. 1994) (same). Finally, there is no indication in the record as to whether Plaintiff was asked to explain how he could afford to drive an expensive vehicle and live in an expensive home.[8] Merely driving an expensive vehicle or owning an expensive home is not sufficient to constitute probable cause that cash found in the home is connected to illegal activity.

Defendants attempt to bolster the case for probable cause by relying on the positive dog sniff. However, as Plaintiff points out, a great number of federal courts throughout the country have refused to give more than slight weight, if any, to a positive dog sniff of currency. This is because in the past decade or so it has become clear that a substantial portion of this country's paper currency has become contaminated with cocaine or other drugs. This contamination, in turn, renders a positive reaction by a drug-sniffing dog of little value in determining whether the

---

[7] It is not clear whether Plaintiff informed Defendants, at the time of the search, that the money came from his tax refunds. At the summary-judgment stage, however, the Court must draw an inference that he did so.

[8] The Court also notes there is no evidence in the record, aside from assertions of counsel, establishing the values of the vehicle and the home.

currency has been connected to recent illegal drug activity. *See, e.g., United States v. $10,700*, 258 F.3d 215, 230 (3d Cir. 2001) (noting that studies indicate a large percentage of United States currency is contaminated with sufficient traces of drug residue to cause a canine to alert; deciding this case on basis that reliability of particular canine involved in sniff was not established in the record); *United States v. $506,231*, 125 F.3d 442, 453 (7th Cir. 1997) ("[W]e are unwilling to take seriously the evidence of the post-seizure dog sniff... Even the government admits that no one can place much stock in the results of dog sniffs because at least one-third of the currency in the United States is contaminated with cocaine..."); *United States v. $5,000,* 40 F.3d 846, 850 (6th Cir. 1994) (dog sniff of currency not sufficient to provide probable cause, given growing evidence of widespread currency contamination); *cf. United States v. Saccoccia*, 58 F.3d 754, 777 (1st Cir. 1995) (although widespread contamination of currency plainly lessens impact of dog sniff evidence, such evidence still retains some probative value).

    The facts surrounding the alleged controlled buy are in dispute, as are the facts concerning possible sources of the money seized by Defendants. Plaintiff's allegedly extravagant lifestyle provides at most only a suspicion that he was involved in illegal activity to support that lifestyle. Finally, the positive canine alerts to the currency, even if entitled to some weight, are of insufficient reliability to raise Defendants' suspicions to the level of probable cause. Again, the viability of this claim appears to depend in large part on the facts surrounding the alleged controlled buy, because the rest of the information known by Defendants was not sufficient to provide probable cause that the currency seized constituted the proceeds of illegal activity or evidence of a crime. Since the controlled-buy facts are disputed, summary judgment cannot be granted to either party on this claim.

**Due Process Claim for Failure to Return Currency:** Plaintiff maintains the City violated his right to due process by retaining his money rather than returning it to him, once it had been determined that no forfeiture action would be filed against the currency.[9] Plaintiff claims this retention of his currency was pursuant to a custom and policy followed by the City. This alleged custom and policy consists of two parts: first, the City's officers have a custom of relying on "bad" controlled buys to obtain a search warrant; second, the City has a custom and policy of keeping any money seized as a result of a search, even if no forfeiture action is instituted against the currency.

As its main defense against this cause of action, the City argues that Plaintiff cannot state a due-process cause of action because the seizure of the currency was "random and unauthorized" and Plaintiff had adequate remedies under state law to obtain the return of his money. The City's argument is based on a pair of United States Supreme Court cases, *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The *Parratt/Hudson* doctrine stands for the proposition that if a negligent or intentional deprivation of property by a state actor is random and unauthorized, and the plaintiff has an adequate remedy at state law to obtain compensation for the loss of property, the deprivation of property cannot be a violation of due process. *See Gonzales v. City of Castle Rock, supra*, 366 F.3d at 1111-1112. The City claims Plaintiff could have filed a lawsuit relying on the state Tort Claims Act ("TCA"), NMSA § § 41-4-1 *et seq.*, could have filed a complaint with the Police Oversight Commission, and could have filed a motion under the rules of criminal

---

[9]Plaintiff does not appear to allege that Defendant Burge or Defendant Fuller had any involvement in the retention of the currency, other than the initial seizure. This "retention" claim, therefore, is brought against the City rather than the individual Defendants.

procedure to obtain the return of the "evidence" seized and retained by the City. The City does not explain how any of these proposed remedies would have been effective. For example, as Plaintiff points out, there was no criminal case pending in which he could file a motion for the return of the evidence, and the rule relied on by the City appears to presuppose the existence of such a case. NMRA 5-212(C) (motion for return of property shall be made within twenty days after the entry of a plea). In addition, no authority has been presented to the Court indicating that the Police Oversight Commission has the power to order the City to release property to individuals. Finally, the City does not explain which waiver of sovereign immunity contained in the TCA, if any, would have applied to the retention of currency.[10] At this point, therefore, the Court finds the City has not shown that an adequate state-law remedy actually was available to Plaintiff to redress the retention of his currency.[11]

In addition, the Court notes that the *Parratt/Hudson* doctrine applies only where the deprivation of property is random and unauthorized. Where, as here, a plaintiff has alleged that the deprivation of property was pursuant to a custom, policy, or established procedure, the Tenth Circuit as well as other courts have held the deprivation was not random or unauthorized, and that *Parratt* and *Hudson* have no applicability. *Gonzales v. City of Castle Rock*, 366 F.3d at 1112-1113; *Higgins v. Beyer*, 293 F.3d 683, 694 (3d Cir. 2002); *Lathon v. City of St. Louis*, 242

---

[10]The only waiver that appears to have possible application is that found in § 41-4-12, waiving immunity for violations of property rights committed by law enforcement officers. However, as the City has argued, Officers Burge and Fuller did not retain the currency themselves; they turned it over to other City employees. It is not clear, therefore, whether the retention of the property was committed by law enforcement officers or by employees who would not qualify as law enforcement officers.

[11]The Court has not undertaken the task of attempting to determine whether any state-law remedies other than those argued by the City might have been available to Plaintiff.

F.3d 841, 843 (8th Cir. 2001); *Alexandre v. Cortes*, 140 F.3d 406, 411-12 (2d Cir. 1998); *Putman v. Unknown Smith*, 98 F.3d 1093, 1096 (8th Cir. 1996). Several of these cases have been decided in the context of property not being returned following a search and seizure. *See Lathon* (pivotal deprivation in the case was not the initial seizure of property, but the refusal to return them; the refusal was not random or unauthorized); *Alexandre* (release of seized car to someone other than plaintiff was in accordance with city's procedures, and therefore not random or unauthorized); *Putman* (failure to return seized vehicle was not random or unauthorized, but a foreseeable consequence of the county's zero-tolerance seizure policy). If Plaintiff can prove the alleged custom and policy in this case, therefore, the *Parratt/Hudson* defense raised by the City will fail. Furthermore, establishing the existence of such a custom or policy will also establish a basis for municipal liability against the City. *See Gonzales v. City of Castle Rock, supra,* 366 F.3d at 1113 (municipality may be sued directly under § 1983 for constitutional violations caused by official custom or policy). For this reason, as well as the fact that the City has not demonstrated that an adequate state-law remedy was available to Plaintiff, the City's motion for summary judgment, as well as the motion to dismiss the municipal liability claim, will be denied on this record.[12] In so ruling, the Court has not overlooked the City's reliance on its written policies concerning the use of confidential informants and the execution of search warrants. Since the

---

[12]The Court will also deny Plaintiff's request for summary judgment on this claim. It is not clear at this time whether Plaintiff will be able to prove the City had a custom or policy of retaining money seized during searches. If there is no such custom or policy, it is not apparent he has sued the individual City employee responsible for the decision to retain the money. If Defendants Burge and Fuller did not make that decision, and there is no basis for municipal liability because there was no custom or policy, Plaintiff's claim will fail because he has not yet sued the correct defendant.

crucial deprivation for purposes of the due-process claim is the unjustified retention of Plaintiff's currency, rather than the initial seizure, these written policies do not absolve the City of liability.

**Motion to Strike Affidavits Filed By Plaintiff's Counsel**: Counsel for Plaintiffs has filed three affidavits seeking discovery, pursuant to Rule 56(f) of the federal rules of civil procedure. Defendants have moved to strike these affidavits, contending they are insufficient to support Plaintiff's request for discovery. Defendants point out that Plaintiff did not originally object when, after moving for summary judgment on the basis of qualified immunity, the individual Defendants requested a stay of discovery. Since that stay was entered, however, Plaintiff has been allowed to amend his complaint to state a municipal-liability claim against the City. Furthermore, even without discovery, Plaintiff has been able to submit some evidence indicating that his allegation of a custom or policy is not completely baseless. [Exhs. C, D, Resp. to MSJ] The Court therefore determines that the stay of discovery should be lifted and Plaintiff should be allowed to perform discovery related to all the claims raised in this lawsuit. Defendants' motion to strike the Rule 56(f) affidavits will be denied.

**Conclusion:** Without any evidence as to why no criminal charges or forfeiture action were ever pursued in this case, the reliability of the alleged controlled buy becomes an issue of disputed fact, rather than an established fact. In turn, this raises an issue of fact as to whether there was probable cause to search Plaintiff's residence, or to believe the currency seized was subject to such seizure. Finally, there are factual and legal questions remaining to be resolved with respect to the City's failure to return the currency to Plaintiff until after he filed this lawsuit. For all these reasons, the motions filed by both parties in this case will be denied. New case management deadlines will be established by the Court.

**ORDER**

A Memorandum Opinion having been filed in this case, it is hereby ORDERED that the following motions be, and hereby are, DENIED: two motions for summary judgment filed by Defendants (Docs. 11, 53); Plaintiff's motion for summary judgment (Doc. 29); Defendants' motion to strike affidavits (Doc. 32); and Defendants' motion to dismiss (Doc. 50).

**DATED** at Albuquerque this 27th day of October, 2004.

BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff**
Joseph P. Kennedy
Shannon L. Oliver

**For Defendants**
W. Ann Maggiore
Stephanie M. Griffin